**GABRIELLI LEVITT LLP**
Michael J. Gabrielli
michael@gabriellilaw.com
2426 Eastchester Rd., Ste. 215
Bronx, New York 10469
Telephone: (718) 708-5322
Facsimile: (718) 708-5966

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOHER KREINDL, individually and on behalf of other similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>THE PEARL GROUP d/b/a PURETOUCH SKIN CARE,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Christopher Kreindl, a New York Resident ("Plaintiff" or "Kreindl"), individually and on behalf of other similarly situated individuals, alleges the following Class Action Complaint against Defendant, The Pearl Group d/b/a PureTouch Skin Care ("Defendant" or "PureTouch"), upon personal knowledge as to himself and his own acts and upon information and belief as to all other matters, based upon, inter alia, the investigation made by his attorneys – as to all other matters, as follows:

## INTRODUCTION

1.      This is a proposed Class Action Complaint against PureTouch for falsely, misleadingly, and deceptively labeling its products as "natural" and for falsely, misleadingly, and deceptively labeling these products as made with "natural ingredients" when these products in fact contain an array of synthetic and toxic ingredients (collectively, the "Falsely Labeled Products").[1]

---

[1] The Products include, but are not limited to, PureTouch Naturals Tush Wipes. Discovery may demonstrate that additional PureTouch products are within the scope of this Complaint.

2.      Aware of the health risks and environmental damage caused by chemical-laden personal care and household care products, and aware that toxic chemicals can enter the body through skin contact, consumers increasingly demand products that are natural and/or plant-based, and that omit harsh chemicals.

3.      PureTouch knows this. PureTouch also knows that consumers will pay a premium for natural and/or plant-based products that do not contain harsh chemicals.

4.      To capture this growing market, PureTouch labels many of its personal care products as "natural" and made from a "natural formula" containing "natural ingredients." *See*, product labels and ingredients attached as **Exhibit A**.

5.      Instead, PureTouch's products are a chemical soup, containing a substantial array and significant amount of ingredients that are synthetic and many of which are federally classified as toxic substances.

6.      PureTouch's ingredients are "legal" for use in personal care products, in that the law does not prohibit them from being used. PureTouch, however, did and does not claim that its products are simply "legal," it claims that its products are "natural" and made with a "natural formula" containing "natural ingredients." *See*, Exhibit A.

7.      By deceiving consumers about the nature, quality, and/or ingredients of its products, PureTouch is able to command a premium price, increasing consumers' willingness to pay and take away market share from competing products, thereby increasing its own sales and profits.

8.      Consumers lack the scientific knowledge necessary to determine whether personal care ingredients are natural, plant-based, or harsh. Reasonable consumers must and do rely on the company to report accurately what the product is made of.

9.      PureTouch intended for consumers to rely on its representations, and hundreds of thousands of reasonable consumers did in fact so rely.

10.     As a result of its false, misleading, and deceptive labeling, PureTouch was able to sell its products to hundreds of thousands of consumers throughout the United States and to realize sizeable profits.

11.     PureTouch's false and misleading representations and omissions violate state laws as detailed more fully below, including New York General Business Law § 349, New York General Business Law § 350, and common law.

12.     Plaintiff and those similarly situated ("Class Members") relied on Defendant's misrepresentations that the Products are natural when purchasing the Products. Plaintiff and Class Members paid a premium for the Products over comparable products that did not purport to be natural. Given that Plaintiff and Class Members paid a premium for the Products based on Defendant's misrepresentations that they are natural, Plaintiff and Class Members suffered an injury in the amount of the premium paid.

13.     Plaintiff brings this action to stop PureTouch's deceptive and misleading practices.

## JURISDICTION AND VENUE

14.     This is a nationwide consumer class action brought by Plaintiff on behalf of all individuals who purchased the Falsely Labeled Products for personal use and not for resale.

15.     This Court has personal jurisdiction over Defendant because it regularly conducts business in this District and purposefully avails itself of the laws of New York to market, promote, distribute, and sell the Products to consumers in New York and this District.

16.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which the proposed plaintiff class is comprised of at least 100 members, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

17.     Venue is proper in this District under 28 U.S.C. § 1391(a). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Falsely Labeled Products, occurred within this District.

## PARTIES

18.     Plaintiff Kreindl is a resident of Queens County, New York. He purchased the Defendant's PureTouch Naturals Tush Wipes for personal use within the State of New York during the three years preceding the filing of this Complaint.

19.     In deciding to make these purchases, Plaintiff saw, relied upon, and reasonably believed the label representations that the wipes were "natural" and made with a "natural formula" containing "natural ingredients." These representations were a significant reason for his purchase.

20.     Had Plaintiffs known at the time that these products were not "natural," were not made with a "natural formula" and did not contain "naturally ingredients," as promised, he would not have purchased these products.

21.     Had Plaintiff known at the time that these products contained harsh chemicals, he would not have purchased these products.

22.     Plaintiff purchased, purchased more of, or paid more for, the Falsely Labeled Products than he would have had he known the truth about the Falsely Labeled Products.

23.     If PureTouch's products were reformulated such that its representations were truthful, Plaintiff would consider purchasing PureTouch's products in the future.

24.     Defendant is incorporated under the laws of California and maintains its principal place of business and headquarters in Buena Park, California.

25.     Defendant manufactures and/or causes the manufacture of personal care products. Defendant labels these products under its own name, and markets and distributes the products through online websites and retail stores in New York and the United States.

## SUBSTANTIVE

26.     American consumers increasingly and consciously seek out natural ingredients in their personal care products. Once a small niche market, natural products are now sold by conventional retailers, and their sales continue to soar.

27.     Consumers value natural products for myriad health, environmental, and political reasons, including avoiding skin irritation, attaining health and wellness, helping the environment, and financially supporting companies that share these values.

28.     Hoping to capture this growing market, PureTouch produces personal care products that it markets as natural and made with a "natural formula" containing "natural ingredients." *See*, **Exhibit A**.

29.     These representations are false, however, as the products contain a plethora of synthetic ingredients.

30.     Representing that a product is "natural" and/or made with a "natural formula" containing "natural ingredients" is a statement of fact.

31.     Consumers reasonably believe that a product labeled as natural does not contain synthetic ingredients.

32.     Trade associations also define natural products as not containing synthetic ingredients.

33.     PureTouch knows and intends that when consumers see the product labels promising the product is natural, consumers will understand that to mean that, at the very least, the product does not contain synthetic ingredients.

34.     PureTouch's representations that its products are "natural," made with a "natural formula" and containing "natural ingredients" are false. In fact, many of these products contain one or more synthetic ingredients.

35.     The Falsely Labeled Products are thus not "natural," made with a "natural formula" or contain "natural ingredients," and labeling them as such is misleading and deceptive.

36.     These products all contain synthetic ingredients, including but not limited to:

a.     ***Phenoxyethanol*** is toxic by definition under federal law, based on animal testing demonstrating that the substance is lethal even in very small doses. Even short exposure could cause serious temporary or residual injury. It is toxic to the kidneys, the nervous system, and the liver. It is extremely hazardous in case of eye contact and very hazardous in case of skin contact (defatting the skin and adversely affecting the central nervous system and peripheral nervous system, causing headaches, tremors, and central nervous system depression). It is also very

hazardous in case of ingestion or inhalation. It degrades into substances that are even more toxic. It is a category 2 germ cell mutagen, meaning that it is suspected of mutating human cells in a way that can be transmitted to children conceived after exposure. Phenoxyethanol is an ethylene glycol ether, which is known to cause wasting of the testicles, reproductive changes, infertility, and changes to kidney function. Phenoxyethanol is also category 2 carcinogen, meaning that it is suspected to induce cancer or increase its incidence. Case studies indicate that repeated exposure to phenoxyethanol results in acute neurotoxic effects, as well as chronic solvent-induced brain syndrome, constant irritability, impaired memory, depression, alcohol intolerance, episodes of tachycardia and dyspnea, and problems with balance and rash.

b.    *Glycerin* is a factory-produced texturizer that is created by a complex process. It is recognized by federal regulations as synthetic. *See*, 7 C.F.R. § 205.605(b). It is commonly used as a filler and thickening agent. It requires multiple processing steps in an industrial environment to create glycerin. It is typically chemically manufactured by, e.g., hydrogenolysis of carbohydrates, by hydration of epichlorohydrin followed by reaction with sodium hydroxide; reaction of allyl alcohol with hydrogen peroxide; reaction of allyl alcohol with peracetic acid followed by hydrolysis. Glycerin can also be produced from propylene oxide, where propene is epoxidized to propylene oxide, which is then isomerized to allyl alcohol. A second epoxidation is carried out with peracetic acid, and the resulting glycidol is hydrolyzed to glycerol. Therefore, it cannot be described as "natural."

c.    *Cocamidopropyl Betaine* is a synthetic surfactant produced by reacting coconut oil fatty acids with 3,3-dimethylaminopropylamine, yielding cocamidopropyl dimethylamine. It is then reacted with sodium monochloroacetate to produce cocamidopropyl betaine. Trade associations prohibit cocamidopropyl betaine from being included in products labeled as "natural."

d.    *Lauryl Glucoside* is produced by alcoholysis of glucose and lauryl alcohol under acidic conditions. Historically, lauryl alcohol was prepared solely from natural products, but is now synthesized from ethylene.

e.    ***Polysorbate 20*** is classified as synthetic by federal regulations, and prohibited by trade groups from being in products labeled as "natural." It is a surfactant produced by reacting sorbitol and its anhydrides with ethylene oxide.

f.    ***Potassium Sorbate*** is produced by reacting sorbic acid and potassium hydroxide. It is classified as a chemical preservative under federal regulations.

g.    ***Tocopherol Acetate*** is a synthetic, inert ingredient which is used pre- and post-harvest as an ingredient in pesticide formulations applied to growing crops or to raw agricultural commodities after harvest. *See*, 40 C.F.R. §180.910.

h.    ***Citric Acid*** is (2-hydroxy-propane-1, 2,3-tricarboxylic acid) is a synthetic substance. While the chemical's name has the word "citric" in it, citric acid is no longer extracted from the citrus fruit but industrially manufactured. It is chemically produced by feeding simple carbohydrates to genetically modified (GMO) Aspergillus Niger black mold and then processing the resulting fermented compound. Potassium phosphate, isoparaffinic petroleum hydrocarbons, tridodecyl amine, magnesium sulfate, calcium hydroxide and sulfuric acid are often used in processing. "We would all love to think that citric acid comes from an orange, but it does not," says Mary Mulry, PhD, a food scientist and founder of consulting firm FoodWise. "It comes from a *chemical process*."[2]

In fact, the FDA has sent a number of warning letters to companies making "natural" claims regarding their use of citric acid. For example, on August 29, 2001, the FDA sent Hirzel Canning Company ("Hirzel") a warning letter regarding its canned tomato products. With respect to Hirzel's Chopped Tomatoes Onions & Garlic and Chopped Mexican Tomatoes & Jalapenos, the FDA stated that these products could not bear the "natural" claim on the label because the products contained a synthetic ingredient, *citric acid*. Specifically, the letter cited to the nutrient content claim preamble from 1993, referenced above, as follows:

---

[2] http://www.newhope.com/ingredients-general/is-citric-acid-natural

*"[A]ccording to the ingredient statements ... citric acid is added to the products ... FDA's policy regarding the use of "natural" means that nothing artificial or synthetic has been included, or has been added to, a food that would not normally be expected to be in the food. Therefore, the addition of ... citric acid to these products preclude the use of the term "natural" to describe this product."*

Because the Hirzel products contained a synthetic ingredient (citric acid), preventing the products from bearing a "natural" claim, the FDA informed Hirzel that the products were misbranded under the FD&C Act under Section 403(a)(1), which states that a food shall be deemed to be misbranded if its labeling is false or misleading in any particular. Similarly, on August 16, 2001, the FDA sent Oak Tree Farm Dairy, Inc. ("Oak Tree") a warning letter regarding its lemonade" product. The FDA stated that this product could not bear the "natural" claims on the label because the product contained a synthetic ingredient, citric acid.

Further, the 9th Circuit Court of Appeals, emphasizing the FDA warning letters described above, issued a pertinent decision over what constitutes a false or misleading "natural" label. In <u>Brazil v. Dole Food Co. Inc.</u>, No. 14-17480 (9th Cir. 2016), at issue was a label on Dole's food products stating that they contained "natural" fruit despite citric acid being an ingredient. The court held that a trier of fact could conclude that (1) a description of Dole's product as "natural" fruit was misleading to a reasonable consumer, and (2) that the citric acid in Dole's products was not "natural." The court relied on guidance issued by the FDA defining "natural" as "that nothing artificial or synthetic … has been included in, or has been added to, a food that would not normally be expected to be in the food." <u>Id</u>. The court also noted that the FDA has issued warning letters to food sellers, accusing their "natural" labels as deceptive because the products contained synthetic citric acid. Specifically, the Court stated:

*"Brazil cited more recent FDA warning letters to food sellers. . . [t]he FDA's letters did not always rely on the limitation that an artificial or synthetic product would 'not normally be expected to be in the food'— and, in fact, asserted that foods that naturally contain citric acid (such as*

*tomatoes) may not be labeled 'all natural' if **synthetic** citric acid is added to them . . . [t]aken together, this evidence could allow a trier of fact to conclude that Dole's description of its products as 'All Natural Fruit' is misleading to a reasonable consumer. The evidence here— including the conflicting testimony of expert witnesses and Dole employees—could also allow a trier of fact to find that the synthetic citric ... in Dole's products were not 'natural.'" Id.* (emphasis added).

## THE REPRESENTATIONS ARE FALSE, DECEPTIVE AND MISLEADING

37.     Defendant's conduct deceived and/or was likely to deceive the public. Consumers were deceived into believing that the listed ingredients are not synthetic, are natural and are not harsh chemicals. Instead, these ingredients are synthetic. Some are also known or suspected toxins and/or environmental hazards and are not reasonably expected by consumers to be added to the products.

38.     Consumers would not know the true nature of the ingredients merely by reading the ingredient label. Discovery of the true nature of the ingredients requires knowledge of chemistry and federal regulations beyond that of the average reasonable consumer.

## PURETOUCH'S DECEPTIVE AND MISLEADING OMISSIONS

39.     Defendant deceptively and misleadingly conceals other material facts about the falsely labeled Products, including:

    a.    the true nature of the falsely labeled Products' ingredients;

    b.    that the falsely labeled Products contain artificial substances and synthetic substances, substances that are synthetically manufactured, or are produced or processed using synthetic ingredients, artificial ingredients, toxins, carcinogens and/or hazardous substances;

    c.    that the falsely labeled Products are not natural;

    d.    that the falsely labeled Products contain harsh chemicals, including toxic compounds;

    e.    that the falsely labeled Products are not what a reasonable consumer would consider to be natural.

40.     Plaintiff and the members of the Class are not at fault for failing to discover Defendant's wrongs earlier, and had no actual or presumptive knowledge of facts sufficient to put them on inquiry

notice.

41.     The production process Defendant uses for many of its ingredients is known only to it. Defendant has not disclosed such information to Plaintiff and the Class members. These facts are not ascertainable and are still not known to Plaintiff, the Class members and reasonable consumers. Defendant's concealment tolls the applicable statute of limitations.

42.     To this day, Defendant continues to conceal and suppress the true nature, identity, source, and method of production of the ingredients in the falsely labeled Products. Defendant knew what representations it made regarding the falsely labeled Products. It also knew what ingredients were added to each product, as (presumably) all product ingredients are listed on the product packages.

## PURETOUCH KNEW THE REPRESENTATIONS WERE FALSE

43.     Defendant knew what representations it made regarding the Falsely Labeled Products. It also knew what ingredients were added to each product, as (presumably) all product ingredients are listed on the product packages.

44.     Defendant is governed by and knows the federal regulations that govern the labeling of the falsely labeled Products, and thus was aware that many of the ingredients are synthetic and/or toxic.

45.     On or about February 28, 2023, Plaintiff's counsel first provided Defendant with all the material allegations included in this Complaint. On or about May 10, 2023, Plaintiff's counsel again provided notice to Defendant, this time with a draft version of this Complaint. Defendant was thus specifically notified that its products labeled as natural contained synthetic substances and harsh compounds.

46.     Defendant thus knew all the facts demonstrating that its falsely labeled Products were falsely advertised.

## PURETOUCH INTENDED CONSUMERS RELY ON ITS MISREPRESENTATIONS

47.     Defendant made the false, deceptive, and misleading representations and omissions, intending for Plaintiff and the Class members to rely upon these representations and omissions in purchasing one or more of the falsely labeled Products.

48.     In making the false, misleading, and deceptive representations and omissions at issue, Defendant knew and intended that consumers would purchase the Defendant's Products when consumers would otherwise purchase a competing product.

49.     In making the false, misleading, and deceptive representations and omissions at issue, Defendant also knew and intended that consumers would pay a premium for natural products and products that are free of harsh chemicals, furthering Defendant's private interest of increasing sales of its products and decreasing the sales of the natural products that are truthfully marketed by its competitors.

50.     Defendant knows that consumers prefer natural products and products that do not contain harsh chemicals. Defendant knows that consumers will pay a premium for these products or would not purchase these products at all unless they were natural and/or contained no harsh chemicals, as advertised.

51.     Similarly, independent surveys confirm that consumers will purchase more natural products than conventional products, and will pay a premium for natural products.

**CONSUMERS REASONABLY RELIED ON PURETOUCH'S MISREPRESENTATIONS**

52.     Consumers frequently rely on label representations and information in making purchase decisions, especially in purchasing personal care products.

53.     When Plaintiff and the Class members purchased the falsely labeled Products, Plaintiff and the Class members saw the false, misleading, and deceptive representations detailed above, and did not receive disclosure of the facts concealed, as detailed above.

54.     These misrepresentations were uniform and were communicated to Plaintiff and every other member of the Class at every point of purchase and consumption.

55.     Plaintiff and the Class members were among the intended recipients of Defendant's deceptive representations and omissions.

56.     Plaintiff and the Class members reasonably relied to their detriment on Defendant's misleading representations and omissions.

57.     Defendant's false, misleading, and deceptive misrepresentations and omissions deceived and misled, and are likely to continue to deceive and mislead, Plaintiff, the Class members, reasonable consumers, and the general public.

58.     Defendant's misleading affirmative statements further obscured what it failed to disclose. Thus, reliance upon Defendant's misleading and deceptive representations and omissions may be presumed.

59.     Defendant made the deceptive representations and omissions with the intent to induce Plaintiff and the Class members to purchase the falsely labeled Products. Plaintiff's and the Class members' reliance upon such representations and omissions may be presumed.

60.     Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions. Thus, Plaintiff and the Class members' reliance upon such representations and omissions may be presumed as a matter of law. The materiality of those representations and omissions also establishes causation between Defendant's conduct and the injuries sustained by Plaintiff and the Class members.

## PURETOUCH'S WRONGFUL CONDUCT CAUSED PLAINTIFFS' INJURY

61.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the Class members in that they:

      a.     paid a sum of money for a product that was not as represented;

      b.     paid a premium price for a product that was not as represented;

      c.     were deprived the benefit of the bargain because the falsely labeled Products they purchased were different from what Defendant warranted;

      d.     were deprived the benefit of the bargain because the falsely labeled Products they purchased had less value than what was represented; and

      e.     did not receive a product that measured up to their expectations as created by Defendant.

62.     Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class members would not have been injured as listed above. Accordingly, Plaintiff and the Class members have suffered "injury in fact" as a result of Defendant's wrongful conduct.

63.     Plaintiff and the Class members all paid money for the falsely labeled Products, but did not obtain the full value of the advertised products due to Defendant's misrepresentations and omissions. Plaintiff and the Class members purchased, purchased more of, or paid more for, the falsely labeled Products than they would have had they known the truth about the falsely labeled Products. Accordingly,

Plaintiff and the Class members have suffered "injury in fact" and lost money or property as a result of Defendant's wrongful conduct.

## PURETOUCH BENEFITTED FROM ITS MISLEADING AND DECEPTIVE REPRESENTATIONS AND OMISSIONS

64.     As the intended, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant has been unjustly enriched through more sales of falsely labeled Products and higher profits at the expense of Plaintiff and the Class members. As a direct and proximate result of its deception, Defendant also unfairly obtained other benefits, including the higher value associated with a natural brand, redirecting sales to it and away from its competitors, and increased sales of its other products.

## CLASS ALLEGATIONS

65.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

66.     Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all others similarly situated individuals within the United States (the "Class" or the "Nationwide Class"), defined as follows:

> All consumers who purchased the Falsely Labeled Products (as defined herein) online or from a retail location within the United States during the during the applicable limitations period (the "Class Period").

67.     Additionally, Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all others similarly situated New York Citizens (the "New York Subclass"), defined as follows:

> All New York residents who purchased the Falsely Labeled Products (as defined herein) online or from a retail location within New York during the during the applicable limitations period (the "Class Period").

68.     Upon information and belief, the scope of these Class and Subclass definitions, including temporal scope, may be further refined after discovery of Defendant's and/or third party records.

69.     The Class and the New York Subclass will be referred to collectively throughout the Complaint as the "Class."

70.    Excluded from the Class are (i) Defendant, any entity or division in which Defendant has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; and (ii) the judge to whom this case is assigned and the judge's staff.

71.    All members of the Class were and are similarly affected by the deceptive advertising of the Defendant, and the relief sought herein is for the benefit of Plaintiff and members of the Class.

72.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

73.    **Numerosity – Federal Rule of Civil Procedure 23(a)(l).** At this time, Plaintiff does not know the exact number of the Class and Subclass members. Based on the annual sales and popularity of the Products, it is readily apparent that the number of consumers in the Class is so large as to make joinder impracticable, if not impossible. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

74.    **Commonality and Predominance –Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

(a)    whether Defendant misrepresented and/or failed to disclose material facts concerning the falsely labeled Products;

(b)    whether Defendant's conduct was unfair, misleading and/or deceptive; and

(c)    whether Defendant breached an express warranty created through the labeling and marketing of its falsely labeled Products.

(d)    whether, as a result of Defendant's misconduct as alleged herein, Plaintiff and the Class suffered an ascertainable loss; and

(e)    Whether Defendant was unjustly enriched at the expense of the Plaintiff and Class Members.

75.    With respect to the New York Subclass, additional questions of law and fact common to the members that predominate over questions that may affect individual members include:

(a)    whether, in violation of § 349 of the New York General Business Law ("GBL"), Defendant engaged in deceptive acts or practices; and

(b)    whether, in violation of GBL § 350, Defendant engaged in false advertising.

76.    Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of himself, and the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

77.    Plaintiff's claims are typical of the claims of the Nationwide Class. Plaintiff is a member of a well-defined class of similarly situated persons and the members of the Nationwide Class were similarly affected by Defendant's conduct and are owed the same relief, as alleged in this Complaint. Members of the Nationwide Class are ascertainable from Plaintiff's description of the class, Defendant's records, and records of third parties accessible through discovery.

78.    Plaintiff's claims are typical of the claims of the New York Subclass. Plaintiff is a member of a well-defined class of similarly situated persons and the members of the New York Subclass were similarly affected by Defendant's conduct and are owed the same relief, as alleged in this Complaint. Members of the New York Subclass are ascertainable from Plaintiff's description of the class, Defendant's records, and records of third parties accessible through discovery.

79.    **Adequacy of Representation - Federal Rule of Civil Procedure 23(a)(4).** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, and he has retained counsel competent and experienced in both consumer protection and class action litigation. Plaintiff and his counsel will fairly and adequately protect the interests of the members of the Class. Undersigned counsel has represented consumers in a variety of actions where they have sought to protect consumers from fraudulent and deceptive practices.

80.    **Insufficiency of Separate Actions - Federal Rule of Civil Procedure 23(b)(l).** Absent a representative class action, members of the Classes would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. The proposed Class thus satisfies the requirements of Fed. R. Civ. P. 23(b)(l).

81.    **Predominance and Superiority of Class Action.** The prerequisites to maintaining a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) are met because questions of law and fact common to each Class member predominates over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

82.    Individual joinder of the Class members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual Class members. Each Class member has been damaged and is entitled to recovery as a result of the violations alleged herein.

83.    Moreover, because the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual Class members to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class action treatment will allow those persons similarly situated to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

84.    Defendant's conduct is generally applicable to the Class and the New York Subclass as a whole and Plaintiff seeks, inter alia, equitable remedies with respect to the Class and the New York Subclass as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Class and the New York Subclass as a whole appropriate.

85.    Plaintiff is unaware of any difficulties in managing this case that should preclude class action.

**CAUSES OF ACTION**
**COUNT I**

**Violation of New York General Business Law § 349: Mislabeling (On Behalf of the New York Subclass)**

86.    Plaintiff incorporates by reference all the allegations of the preceding paragraphs of this Complaint.

87.    New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

88.     The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages, compensatory damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

89.     There is no adequate remedy at law.

90.     Defendant misleadingly, inaccurately, and deceptively present their Products to consumers.

91.     Defendant's improper consumer-oriented conduct—including labeling and advertising the Products as being natural—is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase and pay a premium for Defendant's Products and to use the Products when they otherwise would not have. Defendant made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

92.     Plaintiff and the New York Subclass Members have been injured inasmuch as they paid a premium for Products that were—contrary to Defendant's representations— not natural. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

93.     Defendant's advertising, including online advertising, and the Products' packaging and labeling induced the Plaintiff and the New York Subclass Members to buy Defendant's Products and to pay a premium price for them.

94.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Sub-Class Members have been damaged thereby.

95.     As a result of Defendant's recurring, unlawful deceptive acts and practices, Plaintiff and the New York Sub-Class Members are entitled to monetary, compensatory, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

THEREFORE, Plaintiff prays for relief as set forth below.

## COUNT II

### Violation of the New York General Business Law § 350
### (On Behalf of the New York Subclass)

96.    Plaintiff incorporates by reference all the allegations of the preceding paragraphs of this Complaint.

97.    The acts of Defendant, as described above, and each of them, constitute unlawful, deceptive and fraudulent business acts and practices.

98.    New York General Business Law § 350 provides: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

99.    GBL § 350-a defines "false advertising," in relevant part, as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

100.    Plaintiff and the members of the New York Subclass are consumers who purchased the Products in New York.

101.    As sellers of goods to the consuming public, Defendant is engaged in the conduct of business, trade, or commerce within the intended ambit of GBL § 350.

102.    Defendant's representations made by statement, word, design, device, sound, or any combination thereof, and also the extent to which Defendant's advertising fails to reveal material facts with respect to the Products, as described above, constitute false advertising in violation of the New York General Business Law.

103.    Defendant's false advertising was knowing and intentional.

104.    Defendant's actions led to direct, foreseeable and proximate injury to Plaintiff and the New York Subclass.

105.    As a consequence of Defendant's deceptive marketing scheme, Plaintiff and the other members of the New York Subclass suffered an ascertainable loss, insofar as they would not have purchased the Products had the truth been known, or would have purchased the Products on different terms, or would otherwise purchase a competing product, and as a result of Defendant's conduct, they received a product of less value than what they paid for.

106.    By reason of the foregoing, Defendant is liable to Plaintiff and the other members of the New York Subclass for actual damages, injunctive relief, attorneys' fees, and the costs of this suit.

THEREFORE, Plaintiff prays for relief as set forth below.

## COUNT III

### Breach of Express Warranty

107.    Plaintiff incorporates by reference all the allegations of the preceding paragraphs of this Complaint.

108.    Defendant provided Plaintiff and other members of the Class with written express warranties including, but not limited to, warranties that its Falsely Labeled Products were "natural," made with a "natural formula" and contained "natural ingredients."

109.    These affirmations of fact or promises by Defendant relate to the goods and became part of the basis of the bargain.

110.    Plaintiff and members of the Class purchased the Falsely Labeled Products, believing them to conform to the express warranties.

111.    Defendant breached these warranties. This breach resulted in damages to Plaintiff and other members of the Class, who bought Falsely Labeled Products but did not receive the goods as warranted.

112.    As a proximate result of the breach of warranties by Defendant, Plaintiff and the other members of the Class did not receive goods as warranted. Plaintiff and the members of the Class therefore have been injured and have suffered damages in an amount to be proven at trial. Among other things, Plaintiff and members of the Class did not receive the benefit of the bargain and have suffered other injuries as detailed above. Moreover, had Plaintiff and the Class members known the true facts, they would not have purchased the products, would have purchased fewer products, or would not have been willing to pay the premium price Defendant charged for the products.

THEREFORE, Plaintiff prays for relief as set forth below.

## COUNT IV

### Unjust Enrichment

113.    As a result of Defendant's deceptive, fraudulent, and misleading labeling, advertising, marketing, and sales of the Falsely Labeled Products, Defendant was enriched at the expense of Plaintiff and the other members of the Class through the payment of the purchase price for Defendant's Falsely Labeled Products.

114.    Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that it received from Plaintiff and the other members of the Class, in light of the fact that the Falsely Labeled Products purchased by Plaintiff and the other members of the Class were not what Defendant purported them to be. Thus, it would be unjust or inequitable for Defendant to retain the benefit without restitution to Plaintiff and the other members of the Class for the monies paid to Defendant for such Falsely Labeled Products.

THEREFORE, Plaintiff prays for relief as set forth below.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment on behalf of herself, the Nationwide Class and the New York Subclass, providing such relief as follows:

A.    An order certifying the proposed Nationwide Class and the New York Subclass; appointing Plaintiff as representative of the Nationwide Class; appointing Plaintiff as representative of the and the New York Subclass; and appointing Plaintiff's undersigned counsel as Class counsel for the Class and Subclass;

B.    A declaration that Defendant is financially responsible for notifying Class and Subclass members of the pendency of this suit;

C.    An order requiring proper, complete, and accurate labeling of the Products;

D.    An order requiring an accounting for, and imposition of a constructive trust upon, all monies received by Defendant as a result of the unfair, misleading, fraudulent, and unlawful conduct alleged herein;

E.      Restitution, disgorgement, refund, and/or other monetary damages, together with costs and disbursements, including reasonable attorneys' fees pursuant to the applicable statutes and prejudgment interest at the maximum rate allowable by law;

F.      Injunctive relief on behalf of the Class pursuant to New York General Business Code § 349 and common law, enjoining Defendant's unlawful and deceptive acts;

G.      Statutory damages in the maximum amount provided by law; and

H.      Such further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury. Plaintiff also respectfully requests leave to amend this Complaint to conform to the evidence, if such amendment is needed for trial.

DATED:  August 9, 2023

**GABRIELLI LEVITT LLP**

Michael J. Gabrielli (MG-2421)
michael@gabriellilaw.com
2426 Eastchester Rd., Ste. 215
Bronx, New York 10469
Telephone: (718) 708-5322
Facsimile: (718) 708-5966

*Counsel for Plaintiff and Proposed Class*